## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

IN RE:

Brian Keith Sawyer, and                          CASE NO. 17-01282-5
Rene Whitley Sawyer,

DEBTORS                          CHAPTER  13

## MOTION FOR RELIEF FROM AUTOMATIC STAY

NOW COMES, West Town Bank & Trust (herein the "Movant"), by and through its counsel, W. Brock Mitchell, and with the Consent of Debtors as indicated by the signature below, and hereby moves this Court pursuant to 11 U.S.C. § 362(d), for relief from the automatic stay. In support thereof, Movant respectfully states:

1. On March 15, 2017 ("Petition Date"), Brian Keith Sawyer and Rene Whitley Sawyer (the "Debtors") initiated the above captioned case under Chapter 13 of Title 11 of the U.S. Code.

2. This Court has jurisdiction to hear this matter and enter a final order pursuant to 28 U.S.C. §§157 and 1334; and 11 U.S.C. § 362. The Motion constitutes a core proceeding and is a contested matter pursuant to Fed. R. Bankr. P. 4001(a) and 9014.

3. The Debtors executed or are otherwise obligated to the Movant, under a fully executed Credit Agreement, dated November 12, 2009, and a Deed of Trust dated November 12, 2009, and recorded in Deed Book 416, Page 36, of the Chowan County Public Registry. True and accurate copies of the Credit Agreement and Deed of Trust are attached hereto as **Exhibit A** and **Exhibit B** and are incorporated herein by reference. The subject property is commonly known as 113 Morris Circle, Edenton, North Carolina 27932 (herein "Real Property").

4. The terms of the Credit Agreement and Deed of Trust, among others, required the Debtors to:

   a. Perform under the Agreement by making minimum regular payments equal to the amount of the accrued finance charges or Fifty Dollars ($50.00) whichever amount was greater.

5. Debtors have not made the payments and are in arrears in the amount of $85,408.05 as of the date of the filing of the Chapter 13 petition.

6. Debtors are in breach of the Credit Agreement and Deed of Trust in their pre-petition payments.

7. Pursuant to Debtors petition the Real Property which is the subject matter of this motion is to be surrendered.

8. If Movant is not permitted to proceed with the foreclosure concerning the Real Property, Movant will suffer irreparable injury, loss and damage in that the Real Property subject in the Deed of Trust is losing value and is the only collateral for the Movant's claim.

9. Attached are redacted copies of any documents that support the claim, such as contracts, agreements, in support of right to seek a lift of the automatic stay and foreclose if necessary.

WHEREFORE, Movant prays that this Court issue an Order terminating the stay and granting the following:

1. The Movant be granted Relief from the Automatic Stay for the sole purpose of proceeding with a special proceeding to enforce its rights under the Credit Agreement and Deed of Trust, to proceed with foreclosure of the Real Property, and to re-coup its expenses and costs as allowed by the Credit Agreement and Deed of Trust;

2. The Movant be entitled to recover its reasonable fees and expenses incurred in connection with seeking the relief requested in this Motion as outlined in the Credit Agreement and Deed of Trust; and

3. For such other such relief as the Court deems proper.

This 22nd day of September 2017.

**Hornthal, Riley, Ellis & Maland, LLP**

By: /S/ W. Brock Mitchell
W. Brock Mitchell
State Bar No: 28375
301 East Main Street
Elizabeth City, North Carolina 27909
Telephone: (252) 335-0871
Facsimile: (252) 335-4223
E-mail: Bmitchell@hrem.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

IN RE:

Brian Keith Sawyer and                          CASE NO. 17-01282-5
Rene Whitley Sawyer
          DEBTORS                          CHAPTER  13

## NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY

NOTICE IS HEREBY GIVEN of the Motion for Relief from Automatic Stay filed simultaneously herewith by West Town Bank & Trust in the above captioned case; and

FURTHER NOTICE IS HEREBY GIVEN that this motion may be allowed provided no response and request for a hearing is made by the parties in interest in writing to the Clerk of the Court within fourteen (14) days from the date of this notice; and

FURTHER NOTICE IS HEREBY GIVEN that if a response and a request for hearing is filed by the parties in interest within the time indicated, a hearing will be conducted on the motion and response thereto at a date, time and place to be later set by this Court and all interested parties will be notified accordingly. If no response for a hearing is timely filed, the Court may rule on the motion and response thereto ex parte without further notice.

This the 22nd day of September, 2017.          **Hornthal, Riley, Ellis & Maland, LLP**

By: */S/ W. Brock Mitchell*
W. Brock Mitchell
Attorney for Movant
State Bar No: 28375
301 East Main Street
Elizabeth City, North Carolina 27909
Telephone: (252) 335-0871
Facsimile: (252) 335-4223
E-mail: Bmitchell@hrem.com

## CREDIT AGREEMENT AND DISCLOSURE

| Principal $88,000.00 | Loan Date 11-12-2009 | Maturity 11-12-2019 | ~~Loan No~~ | Call / Coll HELOC | Account | Officer JM | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for our use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Brian K Sawyer  
Rene W Sawyer ~~~~  
920 Soundside Road  
Edenton, NC  27932  

**Lender:**  West Town Savings Bank  
North Riverside Office  
7820 West 26th Street  
North Riverside , IL  60546  

---

**CREDIT LIMIT: $88,000.00**                                **DATE OF AGREEMENT: November 12, 2009**

**Introduction.** This Credit Agreement and Disclosure ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through West Town Savings Bank. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we", "us," "our," and "Lender" mean West Town Savings Bank. **You agree to the following terms and conditions:**

**Promise to Pay.** You promise to pay West Town Savings Bank, or order, the total of all credit advances and **FINANCE CHARGES**, together with all costs and expenses for which you are responsible under this Agreement or under the "Deed of Trust" which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below. **If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.**

**Term.** The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until November 12, 2019 ("Maturity Date"). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity. The draw period of your Credit Line will begin on a date, after the Opening Date, when the Agreement is accepted by us in the State of North Carolina, following the perfection of the Deed of Trust, and the meeting of all of our other conditions and will continue as follows: 10 YEARS. You may obtain credit advances during this period ("Draw Period"). You agree that we may renew or extend the period during which you may obtain credit advances or make payments. Notwithstanding the foregoing, in no event will the time during which you may obtain credit advances on the Credit Line exceed thirty (30) years.

**Minimum Payment.** Your "Regular Payment" will equal the amount of your accrued **FINANCE CHARGES** or $50.00, whichever is greater. You will make 119 of these payments. You will then be required to pay the entire balance owing in a single balloon payment. If you make only the minimum payments, you may not repay any of the principal balance by the end of this payment stream. Your payments will be due monthly. Your "Minimum Payment" will be the Regular Payment, plus any amount past due and all other charges. An increase in the **ANNUAL PERCENTAGE RATE** may increase the amount of your Regular Payment.

In any event, if your Credit Line balance falls below $50.00, you agree to pay your balance in full. You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement.

**Balloon Payment.** Your Credit Line Account is payable in full upon maturity in a single balloon payment. You must pay the entire outstanding principal, interest and any other charges then due. **Unless otherwise required by applicable law, we are under no obligation to refinance the balloon payment at that time. You may be required to make payments out of other assets you own or find a lender, which may be us, willing to lend you the money. If you refinance the balloon, you may have to pay some or all of the closing costs normally associated with a new credit line account, even if you obtain refinancing from us.**

**How Your Payments Are Applied.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied to .

**Receipt of Payments.** All payments must be made by a check, automatic account debit, electronic funds transfer, money order, or other instrument in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement. Payments received at that address on any business day will be credited to your Credit Line as of the date received.

**Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of Eighty-eight Thousand & 00/100 Dollars ($88,000.00), which will be your "Credit Limit" under this Agreement. **During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights.** You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree to not attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you.

**Charges to your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, the Deed of Trust or any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Deed of Trust for this transaction. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your property. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your property. If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Credit Advances.** After the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

   **Credit Line Checks.** Writing a preprinted "HOME EQUITY CHECK" that we will supply to you.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one Borrower telling us not to give advances to the other.

**Limitations on the Use of Checks.** We reserve the right to not honor HOME EQUITY CHECKs in the following circumstances:

   **Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the HOME EQUITY CHECK.

   **Post-dated Checks.** Your HOME EQUITY CHECK is post-dated. If a post-dated HOME EQUITY CHECK is paid and as a result any other check is returned or not paid, we are not responsible.

   **Stolen Checks.** Your HOME EQUITY CHECKs have been reported lost or stolen.

   **Unauthorized Signatures.** Your HOME EQUITY CHECK is not signed by an "Authorized Signer" as defined below.

   **Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the HOME EQUITY CHECK.

   **Transaction Violation.** Your HOME EQUITY CHECK is less than the minimum amount required by this Agreement or you are in violation of any other transaction requirement or would be if we paid the HOME EQUITY CHECK.

If we pay any HOME EQUITY CHECK under these conditions, you must repay us, subject to applicable laws, for the amount of the HOME EQUITY CHECK. The HOME EQUITY CHECK itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return HOME EQUITY CHECKs along with your periodic billing statements; however, your use of each HOME EQUITY CHECK will be reflected on your periodic statement as a credit advance. We do not "certify" HOME EQUITY CHECKs drawn on your Credit Line.

**Transaction Requirements.** The following transaction limitations will apply to the use of your Credit Line:

   **Credit Line HOME EQUITY CHECK Limitations.** The following transaction limitations will apply to your Credit Line and the writing of HOME EQUITY CHECKs.

      **Minimum Advance Amount.** The minimum amount of any credit advance that can be made on your Credit Line is $300.00. This means any HOME EQUITY CHECK must be written for at least the minimum advance amount.

**Limitation on All Access Devices.** You may not use any access device, whether described above or added in the future, for any illegal or unlawful transaction, and we may decline to authorize any transaction that we believe poses an undue risk of illegality or unlawfulness. Notwithstanding the foregoing, we may collect on any debt arising out of any illegal or unlawful transaction.

**Authorized Signers.** The words "Authorized Signer" on HOME EQUITY CHECKs as used in this Agreement mean and include each person who (a) signs the application for this Credit Line, (b) signs this Agreement, or (c) has executed a separate signature authorization card for the Credit Line Account.

**Lost HOME EQUITY CHECKs.** If you lose your HOME EQUITY CHECKs or if someone is using them without your permission, you agree to let us know immediately. The fastest way to notify us is by calling us at (708) 447-3330. You also can notify us at our address shown at the beginning of this Agreement.

**Future Credit Line Services.** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

**Collateral.** You acknowledge this Agreement is secured by the following collateral described in the security instrument listed herein:

**Insurance.** You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us. You may obtain property insurance through any company of your choice that is reasonably satisfactory to us. You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you. Subject to applicable law, if you fail to obtain or maintain insurance as required in the Deed of Trust, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

**Right of Setoff.** To the extent permitted by applicable law, we reserve a right of setoff in all your accounts with us (whether checking, savings, or some other account), including without limitation, all accounts you may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. You authorize us, to the extent permitted by applicable law, to charge or setoff all sums owing on this Agreement against any and all such accounts.

**Periodic Statements.** If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement. It will show, among other things, credit advances, **FINANCE CHARGES**, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

**When FINANCE CHARGES Begin to Accrue.** Periodic **FINANCE CHARGES** for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a **FINANCE CHARGE** on your Credit Line credit advances.

**Method Used to Determine the Balance on Which the FINANCE CHARGE Will be Computed.** A daily **FINANCE CHARGE** will be imposed on **all** credit advances made under your Credit Line imposed from the date of each credit advance based on the "average daily balance" method. To get the average daily balance, we take the beginning balance of your Credit Line Account each day, add any new advances and subtract any payments or credits and any unpaid **FINANCE CHARGES**. This gives us a daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "average daily balance."

**Method of Determining the Amount of FINANCE CHARGE.** Any **FINANCE CHARGE** is determined by applying the "Periodic Rate" to the balance described herein. Then we multiply by the number of days in the billing cycle. This is your **FINANCE CHARGE** calculated by applying a Periodic Rate.

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** as follows. We start with an independent index which is the WALL STREET JOURNAL PRIME RATE (the "Index"). We will use the most recent Index value available to us as of THE DATE OF any **ANNUAL PERCENTAGE RATE** adjustment. The Index is not necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of this Credit Line Account, we may designate a substitute index after notice to you. To determine the Periodic Rate that will apply to your account, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the **ANNUAL PERCENTAGE RATE** we multiply the Periodic Rate by the number of days in a year (daily). This result is the **ANNUAL PERCENTAGE RATE**. The **ANNUAL PERCENTAGE RATE** includes only interest and no other costs.

The Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Adjustments to the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** resulting from changes in the Index will take effect MONTHLY. In no event will the corresponding **ANNUAL PERCENTAGE RATE** be less than 3.990% per annum or more than the lesser of 18.000% or the maximum rate allowed by applicable law. Today the Index is 3.250% per annum, and therefore the initial Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Credit Line are as stated below:

**Current Rates for the First Payment Stream**

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 0.750% | 4.000% | 0.01096% |

**Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds.**

**Forgo Rate Increases.** If we forgo an **ANNUAL PERCENTAGE RATE** increase, at the time of a later adjustment we may return to the full Index value plus margin.

**Conditions Under Which Other Charges May be Imposed.** You agree to pay all the other fees and charges related to your Credit Line as set forth below:

**Annual Fee.** A nonrefundable Annual Fee of $35.00 will be charged to your Credit Line at the following time: On each anniversary of your Credit Line.

**Returned Items.** You may be charged $10.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

**Fee to Stop Payment.** Your Credit Line Account may be charged $20.00 when you request a stop payment on your account.

**Overlimit Charge.** Your Credit Line Account may be charged $20.00 if you cause your Credit Line Account to go over your Credit Limit. This includes writing a HOME EQUITY CHECK in excess of your available balance.

**Charge for Advance Less than Minimum.** Your Credit Line Account may be charged $20.00 if you request a credit advance for less than the minimum advance amount disclosed above, whether we decide to honor it or whether we refuse to honor it, unless applicable law requires a lower charge or prohibits any charge.

**Miscellaneous Photocopying.** If you request a copy of any document, we may charge your Credit Line Account 1.00 for the time it takes us to locate, copy, and mail the document to you. If your request is related to a billing error (see "Your Billing Rights" notice) and an error is found, we will reverse any photocopying charges.

**Lender's Rights.** Under this Agreement, we have the following rights:

**Termination and Acceleration.** We can terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happen: (1) You commit fraud or make a material misrepresentation at any time in connection with this Credit Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition. (2) You do not meet the repayment terms of this Credit Agreement. (3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

(1) The value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you ○ e unable to fulfill your payment obligations und ○ ur Credit Line Account due to a material change in your financial circumstances.

**Loan No:** ███████████

**CREDIT AGREEMENT AND DISCLOSURE**
**(Continued)**

Page 3

(3)  You are in default under any material obligations of this Credit Line Account.  We consider all of your obligations to be material.  Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker.

(4)  We are precluded by government action from imposing the **ANNUAL PERCENTAGE RATE** provided for under this Agreement.

(5)  The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit.

(6)  We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

**Change in Terms.**  We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems).  If the Index is no longer available, we will choose a new Index and margin.  The new Index will have an historical movement substantially similar to the original Index, and the new Index and margin will result in an **ANNUAL PERCENTAGE RATE** that is substantially similar to the rate in effect at the time the original index becomes unavailable.  We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum **ANNUAL PERCENTAGE RATE** under your Credit Line Account is reached.

**Collection Costs.**  We may hire or pay someone else to help collect this Agreement if you do not pay.  You will pay us that amount.  This includes, subject to any limits under applicable law, our reasonable attorneys' fees and our legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals.  If not prohibited by applicable law, you also will pay any court costs, in addition to all other sums provided by law.

**Rate Increase.**  In addition to our other rights during termination and acceleration, we may increase the variable **ANNUAL PERCENTAGE RATE** under this Agreement to 18.000 percent per annum.  The **ANNUAL PERCENTAGE RATE** will not exceed the maximum rate permitted by applicable law.  If we do not increase the **ANNUAL PERCENTAGE RATE** upon termination or acceleration of your Credit Line Account, it will continue at the variable rate in effect as of the date of termination or acceleration of your Credit Line Account.

**Access Devices.**  If your Credit Line is suspended or terminated, you must immediately return to us all HOME EQUITY CHECKs and any other access devices.  Any use of HOME EQUITY CHECKs or other access devices following suspension or termination may be considered fraudulent.  You will also remain liable for any further use of HOME EQUITY CHECKs or other Credit Line access devices not returned to us.

**Delay in Enforcement.**  We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right.  If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice.  For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Cancellation by you.**  If you cancel your right to credit advances under this Agreement, you must notify us in writing at the address shown on your periodic billing statement or other designated address and return all HOME EQUITY CHECKs and any other access devices to us.  Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.**  You may prepay all or any amount owing under this Credit Line at any time without penalty, except we will be entitled to receive all accrued **FINANCE CHARGES**, and other charges, if any.  Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments.  Instead, they will reduce the principal balance owed on the Credit Line.  You agree not to send us payments marked "paid in full", "without recourse", or similar language.  If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  West Town Savings Bank, North Riverside Office, 7820 West 26th Street, North Riverside , IL  60546.

**Notices.**  All notices will be sent to your address as shown in this Agreement.  Notices will be mailed to you at a different address if you give us written notice of a different address.  You agree to advise us promptly if you change your mailing address.

**Credit Information and Related Matters.**  You authorize us to release information about you to third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law.  You agree that, upon our request, you will provide us with a current financial statement, a new credit application, or both, on forms provided by us.  You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition.  We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense.

**Transfer or Assignment.**  Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Deed of Trust.  Your rights under this Agreement belong to you only and may not be transferred or assigned.  Your obligations, however, are binding on your heirs and legal representatives.  Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

**Tax Consequences.**  You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Credit Line is not deductible.  You should consult your own tax advisor for guidance on this subject.

**Governing Law.**  This Agreement will be governed by federal law applicable to us and, to the extent not preempted by federal law, the laws of the State of North Carolina without regard to its conflicts of law provisions.  This Agreement has been accepted by us in the State of North Carolina.

**Choice of Venue.**  If there is a lawsuit, you agree upon our request to submit to the jurisdiction of the courts of Chowan County, State of North Carolina.

**Caption Headings.**  Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Interpretation.**  You agree that this Agreement, together with the Deed of Trust, is the best evidence of your agreements with us.  If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Deed of Trust or any other document to prove what you owe us or that a transaction has taken place.  The copy, microfilm, microfiche, or optical image will have the same validity as the original.  You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the best evidence of your obligation to pay.

**Severability.**  If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced.  Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Acknowledgment.**  You understand and agree to the terms and conditions in this Agreement.  By signing this Agreement, you acknowledge that you have read this Agreement.  You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "What you should know about Home Equity Lines of Credit," given with the application.

**BORROWER:**

x  *Brian K. Sawyer*
Brian K  Sawyer

x  *Rene W Sawyer*
Rene W Sawyer

Effective Disbursement Date: _____

| Loan No ▓▓▓▓▓▓▓▓▓ | CF    IT AGREEMENT AND DISCLOSU<br>(Continued) | Page 5 |

---

# BILLING ERROR RIGHTS

## YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at

       **WEST TOWN SAVINGS BANK**
       **7820 WEST 26TH STREET**
       **NORTH RIVERSIDE, IL  60546**

or at the address listed on your bill.  Write to us as soon as possible.  We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared.  You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

       Your name and account number.

       The dollar amount of the suspected error.

       Describe the error and explain, if you can, why you believe there is an error.  If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong.  To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then.  Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent.  We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit.  You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount.  If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount.  In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent.  However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill.  And, we must tell you the name of anyone we reported you to.  We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

---

FILED in CHOWAN County, NC
on 11/13/09 at 03:36pm
By SUSAN S ROUNTREE
REGISTER OF DEEDS
**BOOK 416 PAGE 36**

Filed for Record in the office of the
Register of deeds, Chowan County, N. Carolina
at ___3:36___ o'clock ___P___ M., on the
___13th___ day of _November_, _2009_
and RECORDED in _Real Estate_ Book
No. ___416___ Page ___36___
Susan S. Rountree – Register of Deeds

Pin# 7805-15-63-9672 BW

## DEED OF TRUST

**THIS DEED OF TRUST SECURES AN EQUITY LINE OF CREDIT GOVERNED BY THE PROVISIONS OF**

**ARTICLE 9 OF CHAPTER 45 OF THE NORTH CAROLINA GENERAL STATUTES**

**THE MAXIMUM PRINCIPAL AMOUNT WHICH MAY BE SECURED**

**AT ANY ONE TIME IS $88,000.00**

**RECORDATION REQUESTED BY:**
  West Town Savings Bank, North Riverside Office, 7820 West 26th Street, North Riverside , IL  60546

**WHEN RECORDED MAIL TO:**
  West Town Savings Bank, North Riverside Office, 7820 West 26th Street, North Riverside , IL  60546

**SEND TAX NOTICES TO:**
  West Town Savings Bank, North Riverside Office, 7820 West 26th Street, North Riverside , IL  60546

**This Deed of Trust prepared by:**
X _____
          Jennifer C. McClaren, Regional Sales Manager

**THIS DEED OF TRUST is dated November 12, 2009**, among Brian K  Sawyer, whose address is 920 Soundside Road, Edenton, NC  27932 and Rene W Sawyer, whose address is 920 Soundside Road, Edenton, NC  27932 ("Grantor"); West Town Savings Bank, whose address is North Riverside Office, 7820 West 26th Street, North Riverside , IL  60546 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Michael R. Hare, whose address is 437 S. Broad Street, Edenton, NC  27932 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.  NOW, THEREFORE,** as security for the Indebtedness, advancements and other sums expended by the Beneficiary pursuant to this Deed of Trust and costs of collection (including attorneys' fees as provided in the Credit Agreement) and other valuable consideration, the receipt of which is hereby acknowledged, Grantor has bargained, sold, given, granted and conveyed and does by these presents bargain, sell, give, grant and convey to Trustee, and Trustee's heirs or successors and assigns, for the benefit of Lender as Beneficiary, all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property")** located in Chowan County, State of North Carolina:

**DEED OF TRUST**
(Continued)

Loan No: 600000147

BOOK 416 PAGE 37

Page 2

Lying and being in Chowan County, North Carolina, and more particularly described as follows: BEING ALL OF LOT 30 OF THE SUBDIVISION OF THE MORRIS PROPERTY, AS SHOWN IN PLAT BOOK 1 AT PAGE 20. BEING THE SAME PROPERTY CONVEYED TO FLORA A. BOURET (NOW JAY) BY DEED RECORDED IN BOOK 230 AT PAGE 299

The Real Property or its address is commonly known as  113 Morris Circle, Edenton, NC  27932.  The Real Property tax identification number is 7805-15-63-9672.

To have and to hold said Real Property with all privileges and appurtenances thereunto belonging, to the Trustee, his heirs, successors and assigns forever, upon the trusts, terms and conditions and for the uses hereinafter set forth.

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B) PERFORMANCE OF EACH OF GRANTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.  THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

This Deed of Trust secures an equity line of credit governed by the provisions of Article 9 of Chapter 45 of the North Carolina General Statutes (N.C.G.S. 45-81 et seq.), including all present and future advances of principal made thereunder and all interest and other sums payable in connection therewith.  Future advances may be made at any time between the date of this Deed of Trust and that date which shall be equal to, but not more than, thirty (30) years beyond the date of this Deed of Trust.  Specifically, without limitation, this Deed of Trust secures a revolving line of credit, which obligates Lender to make advances to Grantor so long as Grantor complies with all the terms of the Credit Agreement and the Related Documents.  The principal amount of the Credit Agreement may be borrowed, repaid, and reborrowed from time to time, as provided in the Credit Agreement, provided that the maximum principal amount of obligations outstanding at any one time shall not exceed the maximum amount set forth above.

PAYMENT AND PERFORMANCE.  Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents.

POSSESSION AND MAINTENANCE OF THE PROPERTY.  Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use.  Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property;  (2)  use, operate or manage the Property; and  (3)  collect the Rents from the Property.

Duty to Maintain.  Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws.  Grantor represents and warrants to Lender that:  (1)  During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and  (3)  Except as previously disclosed to and acknowledged by Lender in writing,  (a)  neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall

**DEED OF TRUST**
(Continued)

Loan No: 600000147

BOOK 416 PAGE 38

Page 3

use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of

**DEED OF TRUST**
**(Continued)**

BOOK 416 PAGE 39

Loan No: 600000147                                                                                          Page 4

Trust.

**Right to Contest.**  Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien.  In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property.  Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.**  Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.**  Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.**  The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.**  Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender, together with such other hazard and liability insurance as Lender may reasonably require.  Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender.  Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender.  Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person.  Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the maximum amount of Grantor's credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.**  Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty.  Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property.  If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender.  Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust.  Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness.  If Lender holds any proceeds after payment in full of the

**DEED OF TRUST**
Loan No: 600000147                    **(Continued)**                                     Page 5

BOOK 416 PAGE 40

Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Credit Agreement; or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. The Deed of Trust also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust:

**Existing Lien.** The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments

**DEED OF TRUST**
(Continued)

Loan No: 600000147

Page 6

BOOK 416 PAGE 41

evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Deed

**DEED OF TRUST**
**(Continued)**

BOOK 416 PAGE 42

Loan No: 600000147                                                      Page 7

of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Grantor. The lien of this Deed of Trust and the security interest granted hereby will automatically attach, without further act, to all after-acquired property attached to and or used in the operation of the Property or any part thereof. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** This conveyance by Grantor is made upon this special trust, that if Grantor pays all of the Indebtedness in full accordance with its terms, terminates the credit line account and performs and complies with all of the covenants, terms and conditions of this Deed of Trust, the Credit Agreement and the Related Documents, then this conveyance and the estate granted hereby shall cease, determine and become void, and this Deed of Trust may be cancelled of record by Beneficiary at the request of Grantor; and in such event, Lender shall execute and deliver to Grantor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property.

**EVENTS OF DEFAULT.** Grantor will be in default under this Deed of Trust if any of the following happen: (A) Grantor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Grantor's income, assets, liabilities, or any other aspects of Grantor's financial condition. (B) Grantor does not meet the repayment terms of the Credit Agreement. (C) Grantor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**DEED OF TRUST**
**(Continued)**

Loan No: 600000147

Page 8

BOOK 416 PAGE 43

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Deed of Trust, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable.

**Express Power of Sale Provision.** Upon the application or request of Lender, it shall be lawful for and the duty of the Trustee, and the Trustee is hereby authorized and empowered, to expose to sale and to sell the Property at public auction for cash, after having first complied with all applicable requirements of North Carolina law with respect to the exercise of powers of sale contained in deeds of trust or such other sales appropriate under the circumstances; and upon any such sale, the Trustee shall convey title to the purchaser in fee simple. In the event of any sale under this Deed of Trust by virtue of the exercise of the powers granted in this Deed of Trust, or pursuant to any order and any judicial proceeding or otherwise, the Property may be sold as an entirety or in separate parcels and in such manner or order as Lender in its sole discretion may elect. Trustee shall be authorized to hold a sale pursuant to North Carolina General Statute Chapter 45. Upon any such sale of the Property, or any portion thereof, after deducting the Trustee's commission and after paying all costs and expenses incurred in connection with such sale, including reasonable attorneys' fees for legal services actually performed by Trustee, Trustee shall apply the proceeds of the sale to the payment of all Indebtedness secured by this Deed of Trust and otherwise as required by the then existing law relating to foreclosures. The Trustee's commission shall be a reasonable commission not to exceed five percent (5%) of the gross proceeds of the sale for a completed foreclosure. In the event foreclosure is commenced but not completed, the Grantor shall pay all expenses incurred by Trustee, including reasonable attorneys' fees and a reasonable partial commission not exceeding five percent (5%) of the outstanding Indebtedness in accordance with the following schedule: one fourth thereof before Trustee issues a notice of hearing on the right to foreclosure; one-half thereof after issuance of said notice; three-fourths thereof after such hearing; and the full commission after the initial sale. If Trustee so elects, Trustee may sell the Property covered by this Deed of Trust at one or more separate sales in any manner permitted by applicable North Carolina law, and any exercise of the powers granted in this Deed of Trust shall not extinguish or exhaust such powers, until the entire Property is sold or the Indebtedness is paid in full. If such Indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts of guaranty, assignments of lease or other security instruments, Lender may at its option exercise the remedies granted under any of the security agreements either concurrently or independently and in such order as Lender may determine.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property

**DEED OF TRUST**
(Continued)

Loan No: 600000147

BOOK 416 PAGE 44

Page 9

preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Credit Agreement or available at law or in equity.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender will have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Trustee's Fees.** The Trustee's commission shall be five percent (5%) of the gross proceeds of the sale for

**DEED OF TRUST**
**(Continued)**

BOOK 416 PAGE 45

a completed foreclosure. In the event foreclosure is commenced, but not completed, Grantor shall pay all expenses incurred by Trustee and partial commission computed on five percent (5%) of the outstanding Indebtedness, according to the following schedule: one-fourth of the commission before Trustee issues a notice of hearing on the right to foreclosure; one-half of the commission after issuance of notice of hearing; three-fourths of the commission after a hearing; and the full commission after the initial sale.

**Express Power to Substitute a Trustee.** Lender shall have the irrevocable right to remove at any time and from time to time without limit the Trustee named in this Deed of Trust without notice or cause and to appoint a successor by an instrument in writing, duly acknowledged, in such a form as to entitle such written instrument to be recorded in the State of North Carolina; and, in the event of the death or resignation of the Trustee named in this Deed of Trust, Lender shall have the right to appoint a successor by such written instrument, and any Trustee so appointed shall be vested with the title to the Property, and shall possess all the powers, duties and obligations herein conferred on the Trustee in the same manner and to the same extent as though the successor trustee were named in this Deed of Trust as Trustee.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Any person may change his or her address for notices under this Deed of Trust by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** What is written in this Deed of Trust and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Deed of Trust. To be effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Carolina without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of North Carolina.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Chowan County, State of North Carolina.

**Joint and Several Liability.** All obligations of Grantor under this Deed of Trust shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each Grantor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Deed of Trust. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just

**DEED OF TRUST**
**(Continued)**

Loan No: 600000147

BOOK 416 PAGE 46

Page 11

because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following words shall have the following meanings when used in this Deed of Trust:

**Beneficiary.** The word "Beneficiary" means West Town Savings Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means Brian K  Sawyer and Rene W Sawyer and includes all co-signers and co-makers signing the Credit Agreement and all their successors and assigns.

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement dated November 12, 2009, **with credit limit of $88,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Credit Agreement is November 12, 2019. **NOTICE TO GRANTOR:  THE CREDIT AGREEMENT CONTAINS A VARIABLE INTEREST RATE.**

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the default section of this Deed of Trust.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

**Grantor.** The word "Grantor" means Brian K  Sawyer and Rene W Sawyer.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**DEED OF TRUST**
**(Continued)**

Loan No: 600000147

BOOK 416 PAGE 47

Page 12

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means West Town Savings Bank, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Michael R. Hare, whose address is 437 S. Broad Street, Edenton, NC 27932 and any substitute or successor trustees.

EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH GRANTOR AGREES TO ITS TERMS.

GRANTOR:

X _Brian K. Sawyer_
Brian K Sawyer

X _Rene W Sawyer_
Rene W Sawyer

**DEED OF TRUST**
**(Continued)**

Loan No: 600000147

Page 13

BOOK 416 PAGE 48

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___North Carolina___ )
                                                              ) SS
COUNTY OF ___Chowan___ )

I, ___Melissa G. Miles___, a Notary Public for said County and State, certify that **Brian K  Sawyer and Rene W Sawyer** personally came before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and Notarial Seal this the ___12th___ day of ___November___, 20 _09_.

Melissa G. Miles
Melissa G. Miles                    **Notary Public**

My Commission Expires:

___10-23-2011___

( Affix Notarial Seal Here )

MELISSA G. MILES
NOTARY PUBLIC-NORTH CAROLINA
BERTIE COUNTY
COMMISSION EXPIRES OCT. 23, 2011

LASER PRO Lending, Ver. 5.46.00.003  Copr. Harland Financial Solutions, Inc. 1997, 2009.   All Rights Reserved.   - NC  F:\CFIWIN\CFI\LPL\G01.FC  TR-887  PR-29

Exhibit A

BOOK 416 PAGE 49

All that certain lot or parcel of land situate in First Township, Chowan County, North Carolina and more particularly described as follows:

**Lot Number 30** of the subdivision of the **Morris Property**, as shown on plat recorded in **Plat Book 1 at Page 20**, to which reference is made for complete description, being the property conveyed to Flora A. Bourret [now Jay] by deed recorded in Book 230 at Page 299.

For further reference and description see deed conveying land to Brian Sawyer and wife, Rene' Sawyer, dated March 31, 2005, recorded in Book 335, Page 926, Chowan County Public Registry.

MGM/2009 Descriptions/Sawyer, Rene (09-T-722)

## CERTIFICATE OF SERVICE

I, W. Brock Mitchell, certify:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age.

That on the 22nd day of September, 2017, a copy of the forgoing **MOTION FOR RELIEF FROM AUTOMATIC STAY  AND NOTICE OF MOTION** for the above Debtors was served upon the following by depositing the same in the United States mail, postage pre-paid, addressed as follows:

Richard C. Poole, Esquire
Attorney for Debtors
1510 E. Arlington Blvd., Suite B
Greenville, NC 27858

And a copy of the **MOTION FOR RELIEF FROM AUTOMATIC STAY AND NOTICE OF MOTION** was served via CM/ECF electronic filing on:

Richard C. Pool, Esquire
Attorney for Debtor

Marjorie K. Lynch
Bankruptcy Administrator

Joseph A. Bledsoe, III., Esquire
Chapter 13 Trustee

This the 22nd day of September, 2017.

**Hornthal, Riley, Ellis & Maland, LLP**

By:*/s/ W. Brock Mitchell*
Attorney for Movant
301 East Main Street
Elizabeth City, North Carolina 27909
N.C. State Bar No. 28375
Phone:  (252) 335-0871
Facsimile:  (252) 335-4223
E-mail: Bmitchell@hrem.com